NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-1185


STATE OF LOUISIANA

VERSUS

GREGORY TODD JACKSON


**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 12,154-05
HONORABLE D. KENT SAVOIE, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir and
Glenn B. Gremillion, Judges.

AFFIRMED.


John F. DeRosier
District Attorney
Carla S. Sigler
Assistant District Attorney
1020 Ryan Street
Lake Charles, LA 70601
(337) 437-3400
Counsel for Appellee:
    State of Louisiana

Thomas L. Lorenzi
Lorenzi, Sanchez & Barnatt, LLP
518 Pujo Street
Lake Charles, LA 70601
(337) 436-8401
Counsel for Defendant/Appellant:
    Gregory T. Jackson

**DECUIR, Judge.**

On October 21, 2005, the State of Louisiana charged Defendant, Gregory T. Jackson, with one count of attempted aggravated rape, in violation of La.R.S. 14:27 and La.R.S. 14:42, and with one count of aggravated burglary, in violation of La.R.S. 14:60. After a jury trial on the merits, Defendant was found guilty as charged.

The sentencing court ordered Defendant to serve twenty years at hard labor without benefit of probation, parole, or suspension of sentence for the attempted aggravated rape conviction. Defendant was also sentenced to fifteen years at hard labor for the aggravated burglary conviction. The trial court directed the sentences to run concurrently. Defendant now protests his sentences on appeal.

### FACTS

The evidence in the record before us reveals the following facts. S.B., the victim, lived in a mobile home in Moss Bluff with her mother, K.L., her mother's boyfriend, C.J.B., and her eight-year-old brother, J.L. S.B. turned sixteen years old on July 23, 2005. After celebrating her birthday at home with her family, S.B. watched a movie on television and went to sleep. During the night, S.B.'s mother left for work while the others remained at home. S.B. later awoke to find a man on top of her wearing a black ski mask over his face. Calling her by a family nickname, the intruder held his hand over S.B.'s mouth, told her he would make them both very happy, and threatened to kill her if she made any sounds. He rubbed himself against her and then tried to kiss her while holding her down forcibly. As he did so, S.B. bit down on his tongue and actually bit a piece off. She spit it out of her mouth and screamed for her mother. The man continued to restrain her with one hand while touching her breasts with the other. S.B. screamed again, this time awakening C.J.B. who came running. The man fled the home as C.J.B. approached. C.J.B. checked on S.B., then he ran after the intruder, but he had quickly disappeared.

Investigating officers recovered a lump of human tissue from S.B.'s bedspread, which also bore a bloodstain. There were bloodstains next to the bed, through the house, and continuing outside. On July 25, 2005, investigating officers received an anonymous tip that they should question Defendant about the attempted rape. The initial attempts to contact Defendant were unsuccessful. Defendant's sister contacted police the following day, stating that Defendant was at her house threatening suicide. Officers took Defendant into custody and obtained a court order to draw blood. Pictures were taken of Defendant's tongue because he was missing the right side of the tip of his tongue.

A forensic DNA analyst at the North Louisiana Crime Lab ran DNA tests on the evidence. The blood drawn from Defendant had the same DNA as the piece of tissue recovered from the crime scene. The probability of finding the same DNA profile in someone other than Defendant was one in 2.38 quadrillion. (There are only about six billion people on earth.)

The evidence shows that the victim and Defendant lived in the same neighborhood and their families were friendly. Defendant, the father of four young boys and two grown children, had hired the victim as a babysitter, and her brother often played with his sons. Testifying on his own behalf, Defendant did not deny his involvement in the attack. He stated that he had no memory of it, as he had mixed prescription drugs with heavy alcohol consumption that night; however, once he heard about the tongue injury, he knew the intruder was him. His only defense at trial was the intoxication defense.

**DISCUSSION**

Defendant contests his sentences: "The sentence imposed by the trial court was cruel, unusual and excessive, and in violation of Article I, § 20 of the Louisiana

2

Constitution of 1974." Defendant asserts that the sentence imposed for attempted aggravated rape is twice the statutory minimum and that the sentence imposed for aggravated burglary is fifteen times the statutory minimum. Defendant maintains that the only possible explanation for his behavior was the interaction of the medication he was taking with the alcohol he had imbibed, and he argues that his sentences should be less onerous because of his long-term treatment for depression and odd behavior while taking his prescribed medication. In its response to Defendant's brief, the State argues that the sentences were reasonable given the facts of the case.

After considering the evidence and arguments presented at the sentencing hearing, the sentencing court imposed a penalty for each of Defendant's convictions and gave oral reasons for its ruling:

> All right. The Court is satisfied and I commend Mr. Lorenzi on an excellent argument in connection with the motion for new trial as well as pleading on behalf of his client. But the fact is that a lesser sentence would seriously deprecate the seriousness of this crime. Mr. Jackson is not eligible for probation, he's not eligible for parole, he's not eligible for any kind of suspended sentence in connection with the attempted aggravated rape charge [for] which he faces 10 to 50 years. I have taken into consideration the fact that the offender knew, knew, because he called her by her name, that the victim in this case was particularly vulnerable because of her age, 16 years old. I heard some of the testimony from her that she may have been abused as a younger child, and I don't know whether Mr. Jackson knew that or not, but there were comments made that I'm going to make you feel good, and me feel good, too. He called her by her nickname . . . . I'm also aware that the jury was satisfied that the offender used threats in the commission of the offense, threatened to kill the young lady if she didn't cooperate. I'm also aware of that, and taken into consideration that he had been drinking, but the jury was not satisfied that that was enough to absolve him of any responsibility. I think even the victim herself indicated that she smelled a strong odor of alcohol. I'm also aware of the excessive hardship that this would cause for his dependents.

After the trial court imposed the sentences, Defendant objected to them as excessive. Defendant filed a motion for reconsideration, arguing that his sentences are excessive, make no measurable contribution to acceptable penal goals, and are a

3

needless imposition of pain and suffering. Citing expert testimony adduced at trial, Defendant further asserted that his medication alone and in combination with alcohol explained his conduct. The trial court denied the motion.

The supreme court has determined that the standard for reviewing excessive sentence claims is abuse of discretion:

> The trial judge is given a wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion.

*State v. Williams*, 03-3514, p. 14 (La. 12/13/04), 893 So.2d 7, 16-17.

> A sentence which falls within the statutory limits may be excessive under certain circumstances. To constitute an excessive sentence, this Court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and[,] therefore, is nothing more than the needless imposition of pain and suffering. The trial judge has broad discretion, and a reviewing court may not set sentences aside absent a manifest abuse of discretion.

*State v. Guzman*, 99-1753, p. 15 (La. 5/16/00), 769 So.2d 1158, 1167 (citations omitted).

In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, this court discussed the factors it considers to determine whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals:

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some

4

insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958.

Other than general claims of excessiveness, Defendant makes one specific argument; he asserts that his intoxication at the time of the offense entitles him to less onerous penalties than those imposed by the sentencing court. The record shows the court imposed sentences only after first considering Defendant's intoxication defense as one of the factors in determining an appropriate penalty. The sentencing court also found other mitigating and aggravating factors applicable to Defendant's case. This court may not determine whether another sentence may have been more appropriate, only whether the sentencing court abused its wide discretion.

In addressing the use of a voluntary intoxication defense in an attempted aggravated rape case, the first circuit has held that the defense is only successful if the State cannot prove beyond a reasonable doubt that the requisite specific intent was present despite the intoxication. *State v. Crawford*, 619 So.2d 828 (La.App. 1 Cir.), *writ denied*, 625 So.2d 1032 (La.1993). Finding the defendant had the requisite specific intent to rape the four-year-old victim, the *Crawford* court further determined that a forty-year hard labor sentence was not excessive.

In *State v. Manasco*, 34,236 (La.App. 2 Cir. 2/28/01), 782 So.2d 111, *writ denied*, 01-890 (La. 3/15/02), 811 So.2d 895, the second circuit upheld a thirty-year sentence imposed for the attempted aggravated rape of a terminally ill, seventy-four-year-old victim after the defendant and a friend unlawfully entered the victim's home. Similarly, in *State v. Brown*, 99-172 (La.App. 5 Cir. 9/28/99), 742 So.2d 1051, 1056, *writ denied*, 99-3148 (La. 4/20/00), 760 So.2d 340, the fifth circuit upheld a twenty-

5

five-year hard labor sentence for attempted aggravated rape even though the defendant was a first felony offender. The adult female victim was attacked outside her apartment, but she was able to fight the defendant off; he eventually grabbed her purse and fled.

In *State v. Nelson*, 98-2354 (La.App. 1 Cir. 6/25/99), 741 So.2d 877, *writ denied*, 99-2769 (La. 3/31/00), 759 So.2d 67, the first circuit upheld consecutive sentences of forty and forty-five years for two attempted aggravated rape convictions and a concurrent thirty-year sentence for aggravated burglary. The defendant broke into the home of the victim, her infant, her sister, and her bedridden mother. While there, the defendant beat and raped the victim twice. Nelson also forced the victim to perform oral sex on him before he left with the family's cash and valuables.

Considering the facts of the case and pertinent jurisprudence, we find the trial court did not abuse its discretion in ordering Defendant to serve a twenty-year sentence for the attempted aggravated rape conviction and a fifteen year sentence for the aggravated burglary conviction.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Rule 2-16.3, Uniform Rules, Courts of Appeal.

6